UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLAYTON EDWARD DANEKER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

    Defendant.

Case No. C18-5148 JCC

ORDER REVERSING AND REMANDING THE CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting evidence dated after his date last insured, by omitting limitations from his residual functional capacity (RFC), and by relying on erroneous vocational expert testimony. Dkt. 13. As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

I.     BACKGROUND

Plaintiff is currently 63 years old, has a high school education, and has worked as a general building contractor and a carpenter. Administrative Record (AR) 126. In June 2015, plaintiff applied for benefits, alleging disability as of November 28, 2007, the day he was injured at work by falling from a ladder. AR 205, 1033. Plaintiff's applications were denied initially

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

and on reconsideration. AR 214, 225. After the ALJ conducted a hearing in December 2016, the ALJ issued a decision finding plaintiff not disabled. AR 140, 113-129.

## II. THE ALJ'S DECISION

Plaintiff's alleged onset date was November 28, 2007, and his date last insured was December 31, 2008. AR 115. Utilizing the five-step disability evaluation process,[1] the ALJ found that during the relevant period:

**Step one:** Plaintiff has not worked since the alleged onset date.

**Step two:** Plaintiff has the following severe impairments: status post left shoulder surgery, chronic obstructive pulmonary disease, and left pectoral neuropathy.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work, only occasionally crawling or climbing ladders, ropes and scaffolds. With the dominant left arm, he can only occasionally reach and frequently handle or finger. He can have occasional exposure to vibration and concentrated levels of dusts, fumes, gases, chemicals, et cetera.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, he is not disabled.

AR 115-129. Plaintiff requested review from the Appeals Council, offering a sworn declaration from a vocational expert stating that the vocational information on which the ALJ relied at step five was inaccurate. AR 13-108. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-2.

## III. DISCUSSION

This Court may set aside the Commissioner's denial of social security benefits only if the

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 2

ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

### A. Medical Opinions

An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

"Only physicians and certain other qualified specialists are considered '[a]cceptable

medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see also* 20 C.F.R. § 404.1502(a), (d). An ALJ may reject the opinion of a non-acceptable medical source, such as a physical therapist, by giving reasons germane to the opinion. *Id.*

### 1. Standing Limitation

Plaintiff argues the ALJ erred by failing to include in the RFC a limitation to occasional standing. Dkt. 13 at 8. The Court agrees.

On December 30, 2008, Jeremy Calkins, P.T., conducted a Physical Work Performance Evaluation that lasted over four hours. AR 1032. He determined that plaintiff "was co-operative and provided full effort on test, even over extending on 2 of the 21 tasks tested." AR 1029. Plaintiff showed 0% self-limiting behaviors, well below the 20% maximum that is still "[w]ithin normal limits." AR 1032. Mr. Calkins "observed physiological signs of fatigue" and pain behaviors during testing. AR 1034, 1033. He observed greater pain, decreased strength and endurance, and a slower gait at the end of testing compared to the beginning. AR 1039.

The ALJ gave Mr. Calkins' opinions "great weight" because they were "based on an extensive evaluation lasting for a period of over four hours" that gave Mr. Calkins "a comprehensive, in-person view of the claimant's functioning" during the relevant period. AR 124. While Mr. Calkins opined that plaintiff could perform medium work, the ALJ determined, "on the basis of the claimant's pain during the course of this evaluation, and in light of the nature of his impairments and his other subjective complaints," that plaintiff had the RFC to perform only light work. AR 124. In other words, the ALJ largely accepted Mr. Calkins' opinions and only discounted them to the extent he found them too permissive, not too limiting.

Despite giving Mr. Calkins' opinion great weight, the ALJ failed to incorporate Mr.

Calkins' opined limitation to only occasional standing.  *See* AR 1029, 117.  Failure to either incorporate the limitation or provide reasons to reject it was error.  *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion …, he errs.").

The Commissioner argues that it is "procedurally significant" that the ALJ mentioned the occasional standing limit in summarizing Mr. Calkins' opinions.  Dkt. 16 at 4 (quoting *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); citing AR 124 (Mr. Calkins concluded although plaintiff "could only occasionally stand, work overhead, and crawl, he could frequently sit and walk")).  *Orteza* is not on point here, because it related to the procedural significance of a doctor's word choice, not an ALJ's.  50 F.3d at 750.  The ALJ failed to offer any reason to reject the standing limit; merely mentioning the limit does not cure the error.

The Commissioner next asserts, without further argument or any citation to the record or authority, that the occasional standing limitation was inconsistent with Mr. Calkins' opinion limiting walking to frequent.  Dkt. 16 at 4.  The ALJ's decision does not contain such an analysis and the Commissioner's contention is thus an improper post hoc argument upon which the Court cannot rely.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995).  Moreover, the Commissioner is not a medical expert qualified to opine that plaintiff is able to stand for as long as he can walk.  As anyone who has tried both can attest, extended standing and walking put different types of strain on the body.

Finally, the Commissioner speculates that the standing limitation was "insignificant or possibly rendered in error" because it was not contained in the "Comments" portion of Mr. Calkins' opinions.  Dkt. 16 at 5.  Mr. Calkins provided a 17-page report, which the Commissioner inaccurately describes as a "check box styled opinio[n]."  Dkt. 16 at 5; AR 1029-

45. In a five-line "Comments" section, Mr. Calkins concludes that plaintiff could not meet the physical demands of his past work. AR 1029. "Areas not matching were predomina[n]tly those that required use of left shoulder for lifting, carrying, or reaching." AR 1029. "Predominantly" does not mean "solely." Moreover, the standing limitation is noted repeatedly. AR 1029, 1030, 1035, 1036, 1037, 1038. The Commissioner's post-hoc argument is speculative and wholly unsupported by the record.

The Court concludes the ALJ erred by failing to include the standing limitation in the RFC.

### 2. June 2009 Examination

Plaintiff argues the ALJ erred by finding that a June 27, 2009, report by examining doctors Lewis Almaraz, M.D., and David Karges, M.D., did not reflect plaintiff's condition before the December 31, 2008, date last insured. Dkt. 13 at 9. Neurologist Dr. Almaraz and orthopedic surgeon Dr. Karges opined that plaintiff must keep his left upper arm parallel to his body for two-handed activities. AR 1061. Raising his upper arm at all "markedly decreases his ability to do continuo[u]s activity and to load the hand." *Id.*

The ALJ gave all examinations after the date last insured "little to no weight given that it relates to the claimant's functioning after the period at issue" and is therefore "largely irrelevant in terms of assessing his residual functional capacity in this case." AR 124.

"[R]eports containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Medical reports "should not be disregarded solely" because rendered retrospectively. *Id.* There is no evidence in the record showing that plaintiff sustained any further injury between the December 2008 date last insured and the June 2009 examination. Neither the ALJ nor the Commissioner


ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 6

point to any evidence that plaintiff's impairments worsened in the six months after his date last insured. The ALJ erred by concluding summarily that the June 2009 report had no bearing on plaintiff's condition in December 2008.

The Commissioner argues that the error is harmless because the left upper extremity limitation is "not inconsistent" with the RFC limiting left arm reaching to "occasional." Dkt. 16 at 6. But the limitation could also be interpreted as prohibiting all reaching, and it is the ALJ who must resolve ambiguities. *See Andrews*, 53 F.3d at 1039. The ALJ did not provide any analysis of the report other than its date. On remand the ALJ should evaluate the June 2009 report.

### B. Department of Labor and Industries Reports

Plaintiff contends the ALJ erred by rejecting several reports report for the Washington state Department of Labor and Industries (L&I) dating from August 2009 to February 2016. Dkt. 13 at 10 (citing AR 457-73, 477-520). The reports include summaries of doctors' opinions and notes, conversations with plaintiff, and vocational analyses. *See*, *e.g.*, AR 482, 492. The latest report concluded that he was "permanently unable to return to work due to the industrial injury." AR 461. The ALJ gave the reports "little weight" because they were all dated after the December 2008 date last insured, and because any disability finding was inconsistent with the medical evidence before the date last insured. AR 126.

Plaintiff contends that "'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'" Dkt. 13 at 10 (quoting *Smith*, 849 F.2d at 1225). However, these reports are not medical evaluations. They simply contain references to and summaries of medical evaluations, most of which are in the record in their original form. *See*, *e.g.*, AR 482 (summarizing results from "12-31-08 P[hysical]

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 7

C[apacity] E[valuation] from Apple Physical Therapy"), 1029-45 (original evaluation).

Plaintiff interprets the L&I reports to mean that he was unable to work from the time of his injury through the February 2016 report. Dkt. 13 at 10. The ALJ rejected this interpretation as inconsistent with the medical evidence before the date last insured. AR 126. The ALJ's finding is supported by substantial evidence such as the December 2008 Physical Capacity Evaluation by Mr. Calkins that found plaintiff could perform medium work. AR 1029. Plaintiff has not demonstrated that the ALJ erred by rejecting the L&I reports.

### C. Lay Witness Statements

Plaintiff contends the ALJ erred by discounting statements from his wife, sister, brother, and neighbor dated in 2015 and 2016. Dkt. 13 at 11-12. All four stated that plaintiff cannot use his left arm well or carry anything heavy. AR 359, 450, 453, 456, 523. An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). The ALJ credited the lay witness statements to some degree in limiting plaintiff to light work, but gave them "limited weight overall" because (1) they appeared to describe primarily plaintiff's contemporaneous condition in 2015 and 2016 and (2) they were inconsistent with medical evidence from the relevant time period. AR 125-26. Plaintiff challenges only the first reason. Dkt. 13 at 12. However, the second reason is sufficient alone. "Inconsistency with medical evidence is [a] germane reaso[n] for discrediting the testimony of lay witnesses." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ's finding of inconsistency was supported by substantial evidence, such as Mr. Calkins' December 2008 evaluation that plaintiff could perform medium work, including carrying 45 pounds with his left hand. AR 1029. Regardless of whether the ALJ's first reason was erroneous, any error is harmless because the ALJ provided a sufficient reason. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012)

(error harmless if "inconsequential to the ultimate disability determination").

### D. Numbers of Jobs in the National Economy

While plaintiff must provide proof he is disabled, at step five the burden shifts to the Commissioner to show that significant numbers of jobs that he could perform exist in the national economy. 20 C.F.R. § 404.1560(c)(2). The Commissioner concedes that three of the occupations the ALJ identified—cleaner, deliverer, and sales attendant—are inconsistent with the RFC because they require bilateral frequent reaching, while the RFC limits the left arm to occasional reaching. Dkt. 16 at 10. Three occupations remain: counter clerk, ironer, and scaling machine operator. AR 128.

The vocational expert at the hearing conceded that the numbers of jobs she provided were for groups of occupations that included the identified occupations. AR 199. Counter clerk was one occupation in a group of 24 occupations that together accounted for 108,000 jobs nationally. AR 201, 192. Ironer was one of 1,589 occupations that together have 246,000 jobs nationally. AR 201, 193. Scaling machine operator was one of 159 occupations that together represent 25,000 jobs nationally. AR 201-02, 194. The vocational expert testified that a person with plaintiff's RFC could perform all of the occupations in the groups. AR 200.

Plaintiff contends that, with no testimony establishing how many jobs exist for the specific occupations of counter clerk, ironer, and scaling machine operator, the Commissioner has not borne her burden at step five. Dkt. 13 at 13-15. The Commissioner argues that the vocational expert's testimony establishes that plaintiff could perform any of the occupations within the group and therefore the jobs numbers may be aggregated. Dkt. 16 at 11 (citing *Frierson v. Berryhill*, 693 F. App'x 660, 662 (9th Cir. 2017)). In *Frierson*, a vocational expert testified that a person with the claimant's RFC could perform the cleaner-housekeeper

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 9

occupation, with 367,779 jobs. *Id.* On cross examination, the expert explained that "the 367,779 cleaner-housekeeping jobs she had identified in fact were the number of jobs in a group of three light, unskilled occupations…." *Id.* The Ninth Circuit rejected the claimant's challenge because the vocational expert further testified that a person with claimant's RFC could "perform all three of the occupations in the cleaner-housekeeper group." *Id.*

This case is different, however, because additional information contradicts the vocational expert's testimony. Plaintiff submitted a sworn declaration by Joseph A. Moisan, Ed.D., to the Appeals Council. AR 13-108. Dr. Moisan described himself as a vocational rehabilitation counselor who frequently testified before ALJs in Social Security disability hearings. AR 13. He stated that the testimony given by the vocational expert during the hearing was inaccurate because a person with plaintiff's RFC could not perform all occupations within a group. AR 16. The group of 24 occupations that includes counter clerk also includes four occupations at the medium strength level, higher than the light work that the ALJ limited plaintiff to in the RFC. AR 56. Of the 1,526[3] occupations in the group that includes ironer, hundreds require medium or higher strength. AR 62-98. Of the 159 occupations in the group that includes scaling machine operator, nearly a hundred require medium or higher strength. AR 104-08.

The Council must consider new and material evidence submitted after the hearing "so long as the evidence relates to the period on or before the ALJ's decision." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); *see also* 20 C.F.R. § 404.970(c). The Appeals Council rejected Dr. Moisan's evidence on the grounds that it was dated September 2017 and therefore "does not relate to the period at issue." AR 2. If that were true, then the

---

[3] No explanation has been provided for why Dr. Moisan's number is slightly different from the number the vocational expert gave at the hearing. *Compare* AR 62, 201.

vocational testimony at the December 2016 hearing would be irrelevant as well. The Court concludes the Commissioner erred by rejecting Dr. Moisan's declaration based on its date.

The Commissioner argues that the number of jobs for counter clerk and scaling machine operator can be established through case law. Dkt. 16 at 11 (citing *Davis v. Comm'r of Soc. Sec.*, No. 1:17-CV-621, 2018 WL 1779341, at *2 (E.D. Cal. Apr. 12, 2018) (vocational expert testified that after 90% erosion of the number of jobs for counter clerk, there were "approximately 15,000 nationally"); *Bell v. Berryhill*, No. 2:16-CV-2118, 2017 WL 1532595, at *2 (W.D. Ark. Apr. 27, 2017) (vocational expert testified that there were 25,793 scaling machine operator jobs nationally)). The Commissioner appears to be asking this Court to either make its own factual findings or to conclude, as a matter of law, that there are significant numbers of jobs plaintiff can perform. This Court cannot make its own findings. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("[W]e cannot rely on independent findings of the district court. We are constrained to review the reasons the ALJ asserts."). And the number of jobs that exist in the national economy is an issue of fact, not a matter of law. The cases the Commissioner cites do not suggest otherwise; in fact they support the necessity of expert testimony to determine jobs numbers.

On remand, the ALJ must address the factual dispute over jobs numbers.

IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Dr. Almaraz and Dr. Karges; reassess the RFC as needed, including incorporating Mr. Calkins' standing limitation; and

proceed to step five as necessary, addressing the factual dispute over jobs numbers.

DATED this 6th day of November, 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE